IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 16-cv-02738-RBJ

MORGAN B. WALTHER,

      Plaintiff,

v.

NANCY A. BERRYHILL,[*] Acting Commissioner of Social Security,

      Defendant.

---

## ORDER

---

      This matter is before the Court on review of the Social Security Administration

Commissioner's decision denying claimant Morgan B. Walther's application for disability

insurance benefits under Title II of the Social Security Act.  Jurisdiction is proper under 42

U.S.C. § 405(g).  For the reasons explained below, the Court reverses and remands the

Commissioner's decision.

### STANDARD OF REVIEW

      This appeal is based upon the administrative record and the parties' briefs.  In reviewing

a final decision by the Commissioner, the District Court examines the record and determines

whether it contains substantial evidence to support the Commissioner's decision.  *Winfrey v.*

*Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).  A decision is not based on substantial evidence if

---

[*] In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted
for Carolyn W. Colvin as the Acting Commissioner of the Social Security Administration.

it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, reversal may be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## BACKGROUND

### A. **Medical Background.**

Mr. Walther is 45 years old. *See* R. 32. He has a bachelor's degree and lives in Cortez, Colorado. *Id.* Prior to filing for disability in 2013, Mr. Walther worked at Wal-Mart for nearly twenty years. R. 25. While there, he worked as a department manager, night receiver, stocker, cash office employee, and cashier. *Id.*

Mr. Walther alleges that he became disabled on July 2, 2013. R. 151. He quit his job because he was having asthma attacks with such frequency that he was "missing more work than he was there." R. 25. He claims that these asthma attacks were brought on when his job requirements as a cashier required too much physical exertion. *Id.*

These respiratory issues are exacerbated by his weight. R. 42. At the time of the hearing before the ALJ, Mr. Walther weighed 492 pounds and had a body mass index of 70.6. *See id.* Tasks such as walking, sitting, standing, and reaching are painful for Mr. Walther because of his morbid obesity. R. 51.

In addition to asthma and morbid obesity, both parties agree that Mr. Walther suffers from lumbar spine degeneration. R. 21. Mr. Walther additionally purports to suffer from sleep

apnea, acid reflux, high blood pressure, borderline type 2 diabetes, gout, and depression. R. 21–22. He claims to have pain in his hips, knees, ankles and feet. R. 22.

Mr. Walther has been a patient at Dr. Hope Barkhurst's general practice since 2004. R. 178. During appointments, Mr. Walther would generally meet with nurse practitioner Brown-Sanchez ("N.P. Brown-Sanchez"), and then Dr. Barkhurst would "sign off on" the treatment plans created by N.P. Brown-Sanchez. R. 302, 305, 308, 314, 316, 319, 323, 326, 327, 328, 330, 333, 334, 376, 369, 372, 375. This posture occurred over seventeen times since 2004. *Id.* However, Dr. Barkhurst personally treated Mr. Walther at least twice during this time. R. 309–312.

In preparation for his hearing before the Administrative Law Judge ("ALJ"), Mr. Walther sent a medical source statement to Dr. Barkhurst and N.P. Brown-Sanchez for completion. R. 403–406. N.P. Brown-Sanchez filled out the statement, noting with specificity Mr. Walther's physical limitations in the employment context. *Id.* Dr. Barkhurst signed and dated this medical source statement. R. 406.

**B. Procedural History.**

Mr. Walther applied for disability insurance benefits on July 15, 2013. R. 151. His application was initially denied on January 30, 2014. R. 81–83. Mr. Walther requested reconsideration, and a video hearing was held before ALJ William Musseman on May 6, 2015. R. 19, 103. The ALJ issued a decision denying benefits on May 28, 2015. R. 16–37. Mr. Walther timely appealed the decision to the Appeals Council. R. 15. The Appeals Council denied his request for review, rendering the ALJ's denial of benefits the final determination of

the Commissioner for the purposes of judicial review.  R. 1–7.  Mr. Walther filed a timely appeal in this court.

### C.  **The ALJ's Decision.**

The ALJ issued an unfavorable decision after evaluating the evidence according to the Social Security Administration's standard five-step process.  R. 19–33.  First, the ALJ found that Mr. Walther had not engaged in substantial gainful activity since his alleged onset date of July 2, 2013.  R. 19.  At step two, the ALJ found that Mr. Walther had the severe impairments of a lumbar spine disorder, asthma, and obesity.  R. 21.  At step three, the ALJ concluded that Mr. Walther did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 24.

The ALJ then found that Mr. Walther retained the residual functional capacity ("RFC") to perform sedentary work with the following restrictions: "the claimant reasonably should be precluded from standing or walking for long periods or lifting heavy weight . . . [t]he claimant can bend and squat, but cannot kneel or crawl, or climb ladders or scaffolds."  R. 31.  At step four, the ALJ concluded that Mr. Walther was able to perform past relevant work, namely the role of "cashier I."  R. 32.  Cashier I, as designated by the Social Security Administration, is a skilled job with a sedentary level of exertion.  R. 32.  Mr. Walther previously held a position classified as cashier I when he worked as a cashier at Wal-Mart.  *See* R. 25, 32.  Therefore, the ALJ determined that Mr. Walther was not disabled.  R. 32.

Despite determining Mr. Walther is not disabled in step four, the ALJ nonetheless proceeded to step five and concluded that there are many jobs aside from cashier I that Mr.

Walther can perform in the national economy.  R. 32.  As such, the ALJ again concluded that

Mr. Walther is not disabled.  R. 33.

## ANALYSIS

Mr. Walther contends that the ALJ erred in the following four ways: (1) failure to

properly consider medical sources' opinions; (2) improper calculation of Mr. Walther's RFC; (3)

failure to assess Mr. Walther's credibility in accordance with substantial evidence; and (4) failure

to sufficiently develop the record.  The Court will discuss each argument in turn.

### A.  Consideration of Medical Sources.

Mr. Walther first contends that the ALJ did not properly consider the opinions of Dr.

Barkhurst, Dr. Rox Burkett, or N.P. Brown-Sanchez.  An ALJ is required to evaluate every

medical opinion he receives.  20 C.F.R. § 404.1527(c).  Certain medical source opinions are

entitled to more weight than others.[1]  *Id.*  The opinion of a treating source is entitled to more

weight than the opinion of a non-treating source.  *See* 20 C.F.R. § 404.1527.  Further, an ALJ is

entitled to disregard a medical source opinion only if he provides specific reasons for doing so in

his decision.  *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. §

404.1527(c).

In this case, the ALJ did not give any weight to the opinions of N.P. Brown-Sanchez, Dr.

Barkhurst, or Dr. Burkett.  While the ALJ properly articulated why he chose to disregard N.P.

Brown-Sanchez's opinions, he discredited or ignored the opinions of both Dr. Barkhurst and Dr.

---

[1]  Social Security regulations regarding the evaluation of medical opinion evidence were amended effective March 27, 2017.  When, as here, an ALJ's decision is the final decision of the Commissioner, the reviewing court applies the law in effect at the time of the ALJ's decision.  *See Chapo v. Astrue*, 682 F.3d 1285, 1291 n.5 (10th Cir. 2012) ("We refer to the regulations in effect at the time of the ALJ's decision.").  Accordingly, citations to 20 C.F.R. § 404.1527 are made in reference to the version in effect from August 24, 2012, to March 26, 2017.

Burkett without sufficient explanation. Because this court "cannot simply presume the ALJ applied the correct legal standards in considering [Dr. Barkhurst's and Dr. Burkett's] opinion[s]," remand is appropriate because this court "cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to [their opinions]." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

### N.P. Brown-Sanchez

The ALJ's decision to reject N.P. Brown-Sanchez's opinions was proper. A nurse practitioner is not a "treating source." *See* 20 C.F.R. § 404.1513 (d)(1) (listing nurse practitioners among medical sources who are not treating sources). An ALJ is entitled to disregard the opinion of a non-treating source if he provides good reasons explaining his decision. *See Doyal*, 331 F.3d at 764. Here, the ALJ determined that N.P. Brown-Sanchez's opinions were not entitled to deference because of "the lack of objective support or clinical findings" in the record. R. 31. He listed specific evidence in the record that he believed contradicted N.P. Brown-Sanchez's opinions. R. 30–31. Because the ALJ supported his decision, his rejection of N.P. Brown-Sanchez's opinions was proper.

### Dr. Hope Barkhurst

Mr. Walther alleges that the ALJ wrongfully rejected Dr. Barkhurst's medical opinions that were expressed in reports prepared by N.P. Brown-Sanchez but signed by Dr. Barkhurst. Dr. Barkhurst personally treated Mr. Walther at least twice. *See* R. 309–312 (medical reports showing Dr. Barkhurst's treatment plan for Mr. Walther's respiratory ailment and her assessment of his obesity and asthma). Further, Mr. Walther was a patient at her medical practice for over ten years, and Dr. Barkhurst personally signed off on the reports prepared after each of his

appointments.  *See* R. 178.  As such, Dr. Barkhurst is a "treating source."  *See* 20 C.F.R. § 404.1513 (classifying a claimant's physician as a treating source).

The opinion of a treating physician concerning the nature of a claimant's disability is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).  However, even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided" in § 404.1527.  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).  The ALJ must "give good reasons" in his decision for the weight given to the treating physician's opinion.  *Id.*; *see also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir.2001) (requiring the ALJ to supply "specific, legitimate reasons" for rejecting the opinion of the treating physician).

Here, the ALJ rejected the medical opinions that Dr. Barkhurst signed off on based upon nothing more than unsupported speculation.  R. 30.  The medical opinions in question concern matters central to Mr. Walther's claim, namely Mr. Walther's morbid obesity, asthma, back pain, and history of respiratory ailments.  *See* R. 302, 305, 308, 314, 316, 319, 323, 326, 327, 328, 330, 333, 334, 376, 369, 372, 375.  They include reference to Mr. Walther's requests for "doctor's notes" to submit to work for absences caused by his alleged disabilities.  *Id.*  The weight given to these opinions significantly impacts the total body of evidence because nearly twenty medical reports in the record take this posture.  *Id.*

Despite the fact that so many reports in the record take this posture, the ALJ only discussed his belief that such opinions should not be attributed to Dr. Barkhurst as it pertained to

the medical source statement. R. 30. A medical source statement is evidence submitted to the ALJ by a claimant's medical source reflecting their opinion about the claimant's alleged health issues. *See* Social Security Ruling ("SSR") 96–5p. The ALJ declined to evaluate the medical source statement as the opinion of Dr. Barkhurst because "there is no evidence that Dr. Barkhurst reviewed each of the findings and agreed with them." *Id*. The ALJ provided no evidence to support his skepticism. An ALJ's "unfounded doubt" that a physician agrees with a medical assessment she signed is error. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). Without more than the ALJ's own hypothesis that Dr. Barkhurst signed a document with which she disagreed, rejecting the opinion was improper. *See Langley*, 373 F.3d at 1121 (holding that unsupported speculation is an inadequate basis on which an ALJ can reject a physician's opinion). Further, I can find no case law that requires a physician to substantiate the sincerity of their medical opinion beyond the act of signing the relevant medical report.

While I am sympathetic to the daunting adjudicative task an ALJ faces when presented with a large volume of medical opinion evidence, that burden does not mitigate an ALJ's responsibility to follow the required steps for evaluating evidence. Because this court cannot meaningfully review the ALJ's decision under a substantial evidence standard in light of his unfounded exclusion of Dr. Barkhurst's opinion evidence, I remand with instructions that the ALJ follow the proper steps in determining and articulating the weight that Dr. Barkhurst's opinions should be given. 20 C.F.R. § 404.1527(c)(2).

*Dr. Rex Burkett*

Finally, the ALJ failed to address the opinion of non-examining physician Dr. Rex Burkett. Even though Dr. Burkett is not a treating source, the ALJ is still required to consider his

opinion and provide specific, legitimate reasons for rejecting it. *See Doyal*, 331 F.3d at 764.

Here, the ALJ failed to even mention the existence of Dr. Burkett's opinion, much less articulate

reasons for rejecting it. This court cannot meaningfully review the ALJ's decision under the

substantial evidence standard without this factual finding. *Id*. As such, I remand with

instructions for the ALJ to explain the weight given to Dr. Burkett's opinion per *Doyal* and 20

C.F.R. § 404.1527(c).

**B. RFC Determination.**

Because this case is remanded for further factual development, this court will not review

the ALJ's initial RFC determination. The RFC determination will necessarily be impacted by a

reevaluation of the medical source opinions. I note, however, that the ALJ failed to follow SSR

96–8p in determining Mr. Walther's sedentary capabilities. Under this rule, the ALJ is required

to "describe the maximum amount of each work-related activity the individual can perform

based on the evidence available in the case record." SSR 96–8p. There are seven physical work-

related skills that an ALJ must consider: sitting, standing, walking, lifting, carrying, pushing, and

pulling. *Id*. "Each function must be considered separately (e.g., 'the individual can walk for 5

out of 8 hours and stand for 6 out of 8 hours')." *Id*. The ALJ failed to list with specificity his

findings with regard to the length of time Mr. Walther can sit, stand, and walk at work. On

remand, I direct the ALJ to make specific findings as to the maximum amount of each work-

related activity that Mr. Walther can perform in accordance with SSR 96–8p.

**C. Credibility Determination.**

Mr. Walther argues that the ALJ failed to properly assess Mr. Walther's credibility and

consequently gave too little weight to his testimony. Because the ALJ's assessment of Mr.

Walther's credibility will be impacted by a reevaluation of the medical source opinions on remand, it is unnecessary to review this claim at present.

### D. **Development of the Record.**

Finally, Mr. Walther contends that the ALJ's refusal to issue a subpoena to obtain Mr. Walther's wage records from Wal-Mart constituted a failure to adequately develop the record. R. 33. Mr. Walther argues that the wage records would have bolstered his credibility and demonstrated the impact of his health issues on his ability to work. *Id.*

An ALJ may issue a subpoena for the production of records when "reasonably necessary for the full presentation of a case." *See* 20 C.F.R. § 404.950(d). In this case, the wage records were not reasonably necessary. Pay-slips and medical reports already in the record provided ample evidence of Mr. Walther's absences from work. R. 151–169, 248–298. Further, the ALJ did not question the legitimacy of the work absences. *See* R. 16-37. I therefore find that the ALJ did not err in refusing to issue the subpoena.

## ORDER

For the reasons described above, the Court REVERSES and REMANDS the Commissioner's decision denying claimant Morgan B. Walther's application for disability insurance benefits.

DATED this 12th day of September, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge